# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CAVIN CLAYTON | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO. JKB-18-2134 |
| GREGORY T. FAIRNAK, et al., | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Plaintiff Cavin Clayton filed suit in state court against his former employer, Enterprise SI Corporation d/b/a Healthcare MDM Inc.,[1] and Enterprise SI's owner, Gregory T. Fairnak, alleging defamation for allegedly false statements made by Defendants in conjunction with Clayton's application for increased government security clearance. (Compl., ECF No. 1-2.) Defendants subsequently removed the case based on diversity jurisdiction. (Notice of Removal, ECF No. 1.) Defendants then filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Mot. Dismiss, ECF No. 9.) No hearing is required. *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, Defendants' Motion will be granted.

### I.  *Factual Background*[2]

According to the Complaint, Plaintiff Clayton is an independent contractor who provides

---

[1] Defendants alerted the Court that Plaintiff's Complaint erroneously referred to this entity by its trade name, "Healthcare MDM, Inc." (Notice of Removal at 1 n.1, ECF No. 1; *see also* Compl. at 1.) Defendants refer to this entity as both "Enterprise LLC" and "Enterprise SI Corporation," but describe the latter as "the real party" in interest in the case. (Notice of Removal at 1 n.1; *see also id.* at 1, 3, 4.) Accordingly, the Court uses that name here.

[2] Consistent with the standard of review on a motion to dismiss, this section summarizes the facts alleged in the Complaint in the light most favorable to the Plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

services under contract to various federal agencies. (Compl. ¶ 7.) Clayton was employed with Defendants through his corporate entity "[f]or some time," but, in August 2016, Defendants informed him that "his services would no longer be required." (*Id.* ¶¶ 8–9.) He now competes with Defendants for government contracts. (*Id.* ¶ 7.)

Sometime after parting ways with Defendants, Clayton applied for increased security clearance from the federal government, which involved gathering information from previous companies with which he'd worked, including Enterprise SI. (*Id.* ¶¶ 10–11.) In mid-December 2016, Defendant Fairnak and/or other agents of Defendant Enterprise SI returned a form to the U.S. Office of Personnel Management (OPM) stating that Clayton had been "fired . . . for cause." (*Id.* ¶ 12.) According to Clayton, the statement was false (*id.* ¶ 12), and Defendants made it either knowing it was false or negligently, with "the intent to harm [Clayton's] chances" of obtaining federal contracts. (*Id.* ¶¶ 13–16.)

According to the Complaint, Defendants' statement to OPM harmed "his standing and reputation within his professional community," caused him "mental anguish and personal humiliation," and made it "significantly more difficult" for him to "obtain[] necessary federal government security clearance now and in the future." (*Id.* ¶¶ 17–18.) He seeks, inter alia, compensatory and punitive damages. (*Id.* at 3–4.)

## II. *Legal Standard*

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In analyzing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts "accept the well-pled allegations of the complaint as true, . . . constru[ing] the facts and reasonable inferences derived therefrom in the

light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). Nevertheless, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or . . . 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Iqbal*, 556 U.S. at 678 (alteration in original) (citation omitted) (quoting *Twombly*, 550 U.S. at 555, 557). The Court must be able to infer "more than the mere possibility of misconduct." *Id.* at 679.

## III. Analysis

Defendants raise multiple grounds for dismissal, including that Plaintiff has failed to sufficiently allege the basic elements of a defamation claim under Maryland law, that Plaintiff's claim is barred by the statute of limitations, and that Defendants are protected by an absolute or qualified privilege. (Mot. Dismiss Mem. Supp. at 2–7, ECF No. 9-1.) The Court need not reach questions of limitations or privilege, because the Court agrees that Plaintiff's Complaint does not contain sufficient factual allegations that, if true, would support a more than speculative right to relief. *Twombly*, 550 U.S. at 555.

To state a claim for defamation under Maryland law, a plaintiff must allege (1) that "the defendant made a defamatory statement to a third person," (2) that "the statement was false," (3) that "the defendant was legally at fault in making the statement," and (4) that "the plaintiff suffered harm." *Lindenmuth v. McCreer*, 165 A.3d 544, 552 (Md. Ct. Spec. App. 2017). Failure to plausibly allege any one of these elements warrants dismissal. Although the Court concludes that Plaintiff cleared the first hurdle by alleging a potentially defamatory statement, he failed to allege more than speculative harm under the fourth element.[3]

---

[3] Because the Court concludes that the claim fails on the fourth element, it need not discuss the second and third elements in depth. Nonetheless, the Court also has reservations about the sufficiency of the allegations of falsity. When describing the end of his employment with Defendants, Plaintiff alleged only that he was "given

3

### A. *Defamation Per Se and Defamation Per Quod*

A defamatory statement is one that "tends to expose a person to public scorn, hatred, contempt or ridicule," and that "discourage[es] others in the community from having a good opinion of, or from associating or dealing with, that person." *Id.* (quoting *Batson v. Shiflett*, 602 A.2d 1191, 1210 (Md. 1992)). Maryland law distinguishes between statements that are defamatory per se and defamatory per quod. *Indep. Newspapers, Inc. v. Brodie*, 966 A.2d 432, 448 (Md. 2009). "Where the words themselves impute the defamatory character," without the necessity of innuendo or inferences drawn from context, a statement is defamatory per se. *Id.* (quoting *Metromedia, Inc. v. Hillman*, 400 A.2d 1117, 1123 (Md. 1979)). By contrast, defamation per quod requires "extrinsic facts . . . in order to establish the defamatory character of the words" through context or innuendo. *Id.* (quoting *Metromedia, Inc.*, 400 A.2d at 1123). To survive a motion to dismiss in a defamation per quod case, the complaint must allege such extrinsic facts. *Id.* Defamation per quod also requires allegations of special damages. *See Metromedia, Inc.*, 400 A.2d at 1119 (quoting *M & S Furniture Sales Co., Inc. v. Edward J. De Bartolo Corp.*, 241 A.2d 126, 128 (Md. 1968)). Whether a statement is defamatory per se or per quod is a question of law. *Shapiro v. Massengill*, 661 A.2d 202, 217 (Md. Ct. Spec. App. 1995).

Plaintiff asserts that Defendants' statement to OPM that they had terminated him "for cause" was defamation per se, because it is the kind of statement that "may impair or hurt [one's]

---

notice that his services would no longer be required." (Compl. ¶ 9.) He later stated, in a near conclusory fashion, that the description of his termination having been "for cause" was "false." (*Id.* ¶ 12.) Under Maryland law, falsity exists if a statement was "not substantially correct." *Doe v. Johns Hopkins Health Syst. Corp.*, 274 F. Supp. 355, 366 (D. Md. 2017) (quoting *Piscatelli v. Van Smith*, 35 A.3d 1140, 1147 (Md. 2012)). In this case, termination because his services were "no longer . . . required" (as Plaintiff alleged) is not incompatible with termination "for cause" (as Defendants allegedly stated). While a contractor's services may become unneeded for neutral reasons, such as a change in business priorities, budgetary problems, or a paucity of work, services may also cease to be "required" because performance was poor or there was a history of misconduct—reasons that would provide "cause" for termination. Because the Court concludes that the Complaint fails on the damages element, it need not decide whether a conclusory allegation that a statement was "false," absent specific factual allegations suggesting that the statement was "not substantially correct," is sufficient to survive a motion to dismiss.

trade or livelyhood [sic]" and may "adversely affect[] [a plaintiff's] fitness for the proper conduct of business." (Opp'n Br. at 4–5, ECF No. 12 (quoting *Shapiro*, 661 A.2d at 218).) However, the very case Plaintiff cites for that definition, *Shapiro v. Massengill*, also makes clear that not all negative employment references are actionable:

> This is not to imply . . . that every negative evaluation of an employee's performance is potentially defamatory. Rather, '[t]he words must go so far as to impute to [the plaintiff] some incapacity or lack of due qualification to fill the position.' In other words, the defamatory statement must be such that[,] 'if true, [it] would disqualify him or render him less fit properly to fulfill the duties incident to the special character assumed.'

*Shapiro*, 661 A.2d at 218 (citations omitted) (first quoting *Foley v. Hoffman*, 52 A.2d 476, 481 (Md. 1947); then quoting *Kilgour v. Evening Star Newspaper Co.*, 53 A. 716, 719 (Md. 1902)). In *Shapiro*, a former employer made statements accusing the plaintiff-lawyer of "outright deceit," poor "ethical[] and moral[]" judgment, and "involvement" in a criminal investigation, statements, the court concluded, that required no innuendo to impute a defamatory meaning. *Id.* at 219. It cited approvingly other examples of defamation per se in employment, such as statements charging someone with "fraud, indirect dealings or incapacity" or "expos[ing] [them] to the hazard of losing [their] office." *Id.* at 218 (quoting *Kilgour*, 53 A. at 717). Other examples of defamation per se include accusations that a professional is a "shyster or crook," *id.* at 218–19, or that a business maintains "dirty and unsanitary-looking food-service" establishments. *Indep. Newspapers*, 996 A.2d at 442 (reversing order compelling disclosure of identities of anonymous internet posters notwithstanding the statements, because the alleged speakers were not the defendants sued).

The statement that Clayton was fired "for cause" does not similarly impute a defamatory meaning on its face. Reference to a prior termination for cause could give rise to an inference of past misconduct of the sort that would "render him less fit" for his profession, *Shapiro*, 661 A.2d

5

at 218 (quoting *Kilgour*, 53 A. at 719). However, the vagueness of the words "for cause" could also encompass a wide range of other circumstances that would not disqualify Clayton from adequately performing future government contracts—for example, temporary inability to work because of illness, or breach of a more peripheral contractual provision that does not implicate his skill or professional capacity.

The statement in this case is much closer to the one at issue in *Leese v. Baltimore Cty.*, 497 A.2d 159 (Md. Ct. Spec. App. 1985), *abrogated on other grounds by Harford Cty. v. Town of Bel Air*, 704 A.2d 421, 429 n.8 (Md. 1998) (discussing scope of government immunity). In that case, the Maryland Court of Special Appeals concluded that a statement by a former employer that the plaintiff had "failed to demonstrate ability to assume a professional management role" was not defamatory per se. 497 A.2d at 176. Only after considering contextual factors, including the plaintiff's six years' experience with that employer in such a professional management role, did the court conclude that, in context, the statement suggested termination "for unsatisfactory performance," and was therefore actionable as defamation per quod. *Id.* (citing *Adler v. Am. Standard Corp.*, 538 F. Supp. 572, 577 (D. Md. 1982)); *see also Adler*, 538 F. Supp. at 576 (finding that an employer's statement was actionable where the "reasonable implication . . . is that plaintiff was guilty of some misconduct, negligence, or incompetence").

Similarly, the statement that Clayton was terminated "for cause" only becomes potentially defamatory in light of specific contextual facts alleged in the Complaint: that the statement was made in the context of applying for government security clearance (Compl. at ¶¶ 10–12), that it was made by a former employer who also worked on government contracts (*id.* at ¶ 7), and that it was made in reference to work Clayton had done for that employer in the context

of government contracts (*id.* at ¶¶ 7–8). Defendants dispute that these allegations provide sufficient extrinsic factors to support defamation per quod. (Mot. Dismiss Mem. Supp. at 3–4.) While the Court agrees that the factual detail in the Complaint is thin, the highly sensitive nature of government work requiring a security clearance gives rise to the inference that any black mark on Clayton's record—no matter how small or ambiguous—would impugn his fitness and qualification for work at that level in the industry. It is this highly sensitive employment context that renders the statement potentially defamatory per quod—albeit, just barely.[4]

### B. Actual Damages

Defamation per quod requires plaintiffs to plead special damages—that is, to plead sufficient facts to show or infer "that [the] words . . . caused actual damage." *M & S Furniture Sales*, 241 A.2d at 128. Actual damages may include economic loss, as well as "impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." *Jacron Sales Co. v. Sindorf*, 350 A.2d 688, 692 (Md. 1976) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974)). Damages based only on "speculation or conjecture are not recoverable," *Kleban v. Eghrari-Sabet*, 920 A.2d 606, 627 (Md. Ct. Spec. App. 2007), and, at the motion to dismiss stage, damages must be alleged at least with sufficient particularity to "put[] the defendant on notice of the manner, nature and extent of injury." *Wineholt v. Westinghouse Elec. Corp.*, 476 A.2d 217, 220 (Md. Ct. Spec. App. 1984).

---

[4] The Court notes that the Plaintiff's opposition brief relied only on arguments that the statement satisfied the definition of defamation per se. (*See* Opp'n Br. at 5.) On a motion to dismiss, however, the Complaint is controlling, not the briefs. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (quoting *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013)) ("'A motion to dismiss tests the sufficiency of a complaint,' and our evaluation is thus generally limited to a review of the allegations of the complaint itself."). In the Complaint, Plaintiff alleged defamation generally, not defamation per se specifically. Given that, Plaintiff's brief cannot amend the Complaint to so limit it, just as his brief could not add new allegations or claims not first set forth in the Complaint. *See Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 758 n.5 (D. Md. 2015) (citing *Stahlman v. United States*, 995 F. Supp. 2d 446, 454 (D. Md. 2014)). Therefore, in construing the facts alleged in the Complaint in the light most favorable to Plaintiff, the Court is not bound by the legal theories emphasized in the opposition brief.

7

Here, Plaintiff alleged that Defendants' statement to OPM made "obtaining necessary federal government security clearance now and in the future . . . significantly more difficult, possibly impairing his ability to earn an appropriate salary for his labor." (Compl. ¶ 18.) He also alleged "mental anguish and personal humiliation," as well as damage to his "character and reputation," and to his "standing and reputation within his professional community." (*Id.* ¶ 17.) These allegations are insufficient to raise a plausible right to relief.

Plaintiff's allegation of harm due to future "difficult[y]" obtaining security clearance is wholly unsupported by any specific facts and, therefore, amounts to pure "speculation and conjecture." *Kleban*, 920 A.2d at 627. His allegation of past difficulty obtaining clearance is too vague to suggest actual injury. Plaintiff did not allege that his application for clearance was denied or that it was protracted or delayed such that it caused him additional expense or anxiety, or that it prevented him from pursuing certain jobs. Plaintiff did not allege that he lost even a single professional opportunity that he otherwise would have had as a result of Defendants' statement to OPM. *See DeWitt v. Scarlett*, 77 A. 271, 273 (Md. 1910) (requiring an allegation that identifiable individuals were dissuaded from doing business with the plaintiff as a result of the defamatory statement).

With respect to reputational harm, mental anguish, and personal humiliation, Plaintiff's allegations are little more than a recitation of the categories of harm that might be compensable as actual injury, but they are completely "devoid of [the] 'further factual enhancement'" required at the pleading stage. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). He has not alleged that any past or prospective associates have been unwilling to engage with him as a result of the statement on the OPM form, or that any professional or personal acquaintances outside of OPM even knew about it. The bare allegation of "mental anguish and personal humiliation,"

standing alone, does not suffice to create a plausible claim of compensable injury. *Compare* Compl. at ¶ 17, *with Wineholt*, 476 A.2d at 221 (reversing dismissal where the plaintiff alleged "extreme mental and emotional anguish which prevented her from engaging in her normal vocation and avocations" and reputational harms "suggest[ing] a loss of substantial hospitality of friends"). Without even the most cursory details about "the manner, nature and extent" of the alleged harms, *id.* at 220, the Court is unable to infer that, as a result of the statement, Plaintiff suffered any actual injury at all.

Accordingly, the Court concludes that Plaintiff failed to sufficiently allege special damages as required in cases of alleged defamation per quod. As such, Plaintiff's Complaint is insufficient to state a plausible claim for relief.

## IV. Conclusion

For the foregoing reasons, an Order shall enter granting Defendants' motion to dismiss (ECF No. 9) and dismissing Plaintiff's Complaint.

DATED this 10th day of December, 2018.

BY THE COURT:

/s/
James K. Bredar
Chief Judge
